No. 24 - _____

## In the United States Court of Appeals

### FOR THE FIFTH CIRCUIT

In Re: First National Capital, LLC

On Petition for Writ of Mandamus from an Order Indefinitely Staying
Action to Confirm Final Arbitration Award**,** Entered June 21, 2024 from United
States District Court, Southern District of Texas No. 4:24-cv-00887 (Eskridge, J.)

## PETITION FOR WRIT OF MANDAMUS

_____

Larry Chek
Richard Smith
**Palmer Lehman Sandberg, PLLC**
8350 N. Central Expressway, Suite 1111
Dallas, Texas 75206
(214) 242-6444

*Counsel for First National Capital, LLC*

# CERTIFICATE OF INTERESTED PERSONS

## *No. 24-_____, In re: First National Capital, LLC*

The undersigned counsel of record certifies that the following listed persons and entities as described in the fourth sentence of Fifth Circuit Rule 28.2.2 have an interest in the outcome of this case. These representations are made so that the judges of this Court may evaluate disqualification or recusal:

1.    First National Capital, LLC, plaintiff and petitioner.

2.    First National Capital Corporation, a California corporation, the sole member of petitioner and 100% owner.

3.    Broadwind Heavy Fabrications, Inc., a Wisconsin corporation, defendant and respondent.

4.    Broadwind, Inc., sole owner of Broadwind Heavy Fabrications, Inc. co-defendant and co-respondent.

The undersigned counsel for First National Capital, LLC, separately lists the following persons as attorneys of record:

5.    Lawrence (Larry) Chek, attorney for First National Capital, LLC

6.    Richard Smith, attorney for First National Capital, LLC

7.    Joseph P. Carlasare, Amundsen Davis, LLC, attorney for respondents

8.    Ronald D. Balfour, Amundsen Davis, LLC, attorney for respondents

9.    Eric Fogel, Amundsen Davis, LLC, attorney for respondents

i

Dated:  July 31, 2024                    */s/ Larry Chek*
                                         Larry Chek

# **TABLE OF CONTENTS**

CERTIFICATE OF INTERESTED PERSONS ...................................................... i

TABLE OF CONTENTS ................................................................... iii

TABLE OF AUTHORITIES ................................................................iv

STATEMENT OF RELIEF SOUGHT ....................................................1

ISSUE PRESENTED .............................................................1

INTRODUCTION ......................................................................1

FACTS NECESSARY TO UNDERSTAND THE ISSUE PRESENTED ..............3

REASONS FOR GRANTING THE WRIT ..............................................7

1.      FNC has a clear and indisputable right to the writ .........................................8

2.      FNC has no other adequate means of obtaining relief. .................................17

3.      The writ is appropriate under the circumstances...........................................19

CONCLUSION ......................................................................20

CERTIFICATE OF SERVICE ................................................22

CERTIFICATE OF COMPLIANCE ....................................................23

ATTACHMENT (Stay Order) ..............................................................24

# TABLE OF AUTHORITIES

CASES:                                                                    Page(s)

*Ames v. Kippel,*
    1999 U.S. App. LEXIS 38965 (5th Cir. 1999)......................................13, 15

*Atl. Marine Const. Co. v. U.S. Dist. Ct. for the W. Dist. of Tex.,*
    571 U.S. 49 (2013)..........................................................................................10

*Baylor Health Care Sys. v. Emplrs. Reinsurance Corp.,*
    492 F.3d 318 (5th Cir. 2007). ........................................................................16

*Bilodeau v. Ahern Rentals, Inc.,*
    2021 U.S. Dist. LEXIS 256662 (S.D. Tex. August 20, 2021) ....................11

*Cadle Co. v. Whataburger of Alice,*
    174 F.3d 599 (5th Cir. 1999). ….....................................................................11

*Cheney v. U.S. Dist. Court,*
    542 U.S. 367 (2004)...................................................................................8, 19

*In re Clarke,*
    94 F.4th 502 (5th Cir. 2024). .........................................................................19

*DEL Corp. v. Wildcat Fluids, LLC,*
    2020 U.S. Dist. LEXIS 237099 (S.D. Tex. 2020) ........................................11

*In re DePuy Orthopaedics, Inc.,*
    870 F.3d 345 (5th Cir. 2017). ..........................................................................8

*Forsythe Int'l, S.A. v. Gibbs Oil Co.,*
    915 F.2d 1017 (5th Cir. 1990). ......................................................................15

*Franklin Elec. Co. v. Int'l Union, United Auto, Aerospace & Ag. Implement Workers,*
    886 F.2d 188 (8th Cir. 1989). ........................................................................16

*Hall St. Assocs., L.L.C. v. Mattel, Inc.,*
    552 U.S. 576 (2007)..........................................................................9, 17, 20

iv

*Int'l Chem. Workers Union v. Mobay Chem. Corp.*,
  755 F.2d 1107 (4th Cir. 1985). ........................................................16

*Jones Dairy Farm v. Local No. P-1236*,
  760 F.2d 173 (7th Cir. 1985). ................................................13, 14

*Lloyd's Register N. Am., Inc.*,
  780 F.3d 283 (5th Cir. 2015). .........................................................9

*Nat'l Presto Indus., Inc.*,
  347 F.3d 662 (7th Cir. 2003). ........................................................18

*Noble House, L.L.C. v. Certain Underwriters at Lloyds*,
  67 F.4th 243 (5th Cir. 2023) . ........................................................10

*OMG, L.P. v. Heritage Auctions, Inc.*,
  612 Fed. Appx. 207 (5th Cir. 2015). ...........................12, 13, 14, 16

*Occidental Petroleum Corp.*,
  217 F.3d 293 (5th Cir. 2000). ..........................................................9

*Piggly Wiggly Operators' Warehouse, Inc. v. Piggly Wiggly Operators'
Warehouse Indep. Truck Drivers Union*,
  611 F.2d 580 (5th Cir. 1980). ........................................................14

*Positive Software Solutions v. New Century Mortg. Corp.*,
  476 F.3d 278 (5th Cir. 2007) ..................................................18, 20

*In re Radmax*,
  720 F.3d 285 (5th Cir. 2013) ........................................................19

*Save Power Limited v. Syntek Finance Corp.*,
  121 F.3d 947 (5th Cir. 1997). ........................................................11

*Stoker v. Norris Cylinder Co.*,
  2011 U.S. Dist. LEXIS 105699 (E.D. Tex. 2011).................................13

*Textile Workers Union v. American Thread Co.*,
  291 F.2d 894 (4th Cir. 1961). ........................................................16

*In re TikTok, Inc.,*
    85 F.4th 352 (5th Cir. 2023). ...........................................................................19

*U.S. Postal Serv. v. Gregory,* 534 U.S. 1 (2001). .....................................................13

*In re Volkswagen of Am., Inc.,*
    545 F.3d 304 (5th Cir. 2008). ..................................................................18, 19

*Woods v. PAM Transp., Inc.-LU,*
    440 Fed. Appx. 265 (5th Cir. 2011). ...........................................................20

**STATUTES**                                                            **PAGE**

9 U.S.C. § 1 et seq..........................................................................................1, 9, 17

**OTHER AUTHORITIES**

RESTATEMENT (SECOND) OF JUDGMENTS § 84 (1980). .............................................13

## STATEMENT OF RELIEF SOUGHT

Petitioner First National Capital, LLC ("FNC") seeks a writ of mandamus ordering the district court to vacate its stay and administrative closure of this case and to proceed to hear FNC's application to confirm its final arbitration award.

## ISSUE PRESENTED

Whether FNC is entitled to mandamus relief on the basis that the district court indisputably erred as a matter of law under 9 U.S.C. § 9 by refusing to proceed with the confirmation of FNC's arbitration award in the parties' agreed exclusive venue, in deference to a preemptively-filed action by defendants in another federal district court.

## INTRODUCTION

After obtaining a final arbitration award in February 2024, FNC filed an application for confirmation of the award under the Federal Arbitration Act (9 U.S.C. § 1 et seq., "FAA") in the Southern District of Texas – the only federal court authorized to confirm the award under the exclusive venue clause of the parties' lease agreement.  But before the filing of FNC's application, Respondents preemptively filed suit in the Northern District of Illinois (their home court) to enforce an alleged settlement occurring in June 2023 and to vacate and enjoin enforcement of the arbitration award. FNC moved to dismiss the Illinois case or transfer venue to the Southern District of Texas, but no ruling has been issued.  In

the meantime, Respondents moved to stay confirmation of the award in the Texas case on the basis of the "first-filed rule," arguing that the Illinois case should take precedence over the confirmation proceeding.

In opposition to the motion to stay, FNC pointed out that, in cases where the parties have agreed to an exclusive venue, the first-filed rule has no application. FNC further noted that the breach-of-settlement claim on which the Illinois action is premised was previously submitted to the arbitrator and dismissed by him. Nonetheless, the Texas district court granted Respondents' motion to stay in reliance upon the first-filed rule, indefinitely staying the Texas case and administratively closing it pending action by the Illinois court.

The district court's order staying the Texas case is clearly and indisputably erroneous as a matter of law. As the holder of a final arbitration award, FNC is entitled under Section 9 of the FAA to confirmation of its award on an expeditious basis by the court specified in the parties' agreement, subject only to the FAA's prescribed grounds for vacatur. Under the FAA and Supreme Court precedent, confirmation of FNC's award must occur in the Southern District of Texas – irrespective of what happens in the Illinois case. Moreover, under Fifth Circuit precedent, once Respondents submitted their breach-of-settlement claim to the arbitrator, they were deemed to have elected arbitration and were thereafter precluded from seeking to re-litigate the claim in federal court.

In contravention of the strong federal policy favoring the enforcement of arbitration awards and the parties' agreement to mandatory venue, FNC has been left without an adequate means to obtain relief as it is now powerless to confirm its award and instead forced to litigate in (or wait upon) another district court with no plausible basis for venue over the confirmation or vacatur of the award. FNC moved in the Texas case for reconsideration of the district court's stay order, emphasizing that the Respondents' breach-of-settlement claim on which the district court premised its stay had previously been submitted to the arbitrator and dismissed.   But the district court summarily denied FNC's motion for reconsideration, giving no apparent consideration to the legal bar against re-litigation of Respondents' previously-arbitrated settlement claim or the frustration of FNC's ability to enjoy the benefits of its arbitration award.

### FACTS NECESSARY TO UNDERSTAND THE ISSUE PRESENTED

In 2018, FNC leased four (4) industrial gantry cranes to Broadwind Heavy Fabrications, Inc. ("BHF") under a Master Equipment Lease Agreement and related Equipment Schedule No. 2 (the "Lease").  Dkt. 1, Exh A. BHF's Lease obligations were guaranteed by its parent Broadwind, Inc. ("BI," and collectively with BHF, "Broadwind").

The Lease contained an arbitration clause which provided that "[a]ny dispute, claim or controversy arising out of or relating to any Lease or the breach,

termination, enforcement, interpretation or validity thereof, including the

determination of the scope or applicability of this agreement to arbitrate, shall be

determined by arbitration in Dallas, Texas before one arbitrator," to be

administered by JAMS.  Lease § 26(c).  The parties further agreed to exclusive

venue in Harris County, Texas with respect to judgment on any arbitration award:

> Without limiting the foregoing, if the provisions of Section 26(c) are
> not enforceable and, in any case seeking provisional remedies in aid
> of arbitration or a *judgment on an arbitration award*, any judicial
> proceeding *arising out of or relating to this Lease* shall be brought in
> any state or federal court of competent jurisdiction in Harris County,
> Texas and each of the parties hereto (i) accepts the exclusive
> jurisdiction of such courts and (ii) waives any objection it may now or
> hereafter have as to the venue of any such proceeding brought in such
> court or that such court is an inconvenient forum. The foregoing shall
> not prevent any action in any other court to enforce a judgment or to
> acquire or reacquire possession of any Equipment.

Lease § 26 (emphasis added).

A dispute thereafter arose between FNC and Broadwind about the purchase

price of the Equipment under the Lease buyout clause and, in June 2022,

Broadwind initiated an arbitration proceeding with JAMS.  FNC counterclaimed

against Broadwind for breach of the Lease and guaranty on the basis that

Broadwind had refused to pay the fair market value determined by the parties'

mutually-engaged appraiser.  Pursuant to the applicable JAMS rules, the

Honorable Mark Whittington, a retired Texas state appellate judge, was appointed

as arbitrator.  Dkt. 1, Exh B.

The parties engaged in litigation for the next 18 months, and the final hearing was ultimately set for December 18 – 19, 2023. Among the issues Broadwind submitted for determination was a claim for breach of an alleged Rule 11 settlement agreement that the parties had been unable to finalize or consummate during the summer of 2023. Broadwind submitted this claim in its Second Amended Arbitration Demand filed with JAMS on December 4, 2023 – just two (2) weeks before the final hearing. Dkt. 1, Exh. E. However, because the arbitrator had previously set a deadline of 60 days prior to trial for the amendment of pleadings in his Supplemental Scheduling Order dated September 19, 2023 (Dkt. 1, Exh. D), Broadwind's Second Amended Arbitration Demand containing this new breach of an alleged settlement claim was stricken by Order dated December 11, 2023. Dkt. 1, Exh F.

One day later, Broadwind initiated a new lawsuit (the "Illinois Action")[1] in the United States District Court for the Northern District of Illinois (the "Illinois Court"), seeking to restrain the final arbitration hearing from going forward based on the alleged existence of a settlement. After an emergency hearing conducted on December 15, 2023, the Illinois Court denied Broadwind's TRO request. Dkt. 17, Exh. A. The final arbitration hearing proceeded as scheduled.

On February 13, 2024, the JAMS arbitrator issued his Final Award (the

---

[1] Civil action no. 1:23-cv-16675.

"Award") in favor of FNC, permitting it to recover from Broadwind, on a joint and several basis, $1,328,879.20 for their breach of the Lease Agreement and guaranty, a forfeiture of BHF's deposit of $58,006.65, the sum of $226,826.03 in attorneys' fees and expenses, and $19,024.03 in JAMS arbitration costs.  Dkt. 1, Exh. C.  The Award provided that "BHF and BI shall take nothing by their claims, which are denied" and expressly "resolve[d] all issues submitted for decision in this arbitration proceeding." *Id.*

On February 27, 2024, Broadwind amended its complaint in the still-pending Illinois Action to add a claim to stay, vacate and enjoin enforcement of the Award on the basis of the alleged settlement.  Dkt. 17, Exh. A; Dkt. 15, p. 4).  On March 11, 2024, FNC filed its Application seeking confirmation of the Award in the venue stipulated by the parties:   the United States District Court for the Southern District of Texas (the "District Court" and the "Texas Case").   Dkt. 1.

In response to FNC's Application seeking confirmation of the Award, Broadwind moved the District Court to stay the Texas Case on the basis that the earlier-filed Illinois Action involved "intertwined issues" and therefore the "first-filed rule" applied, allegedly obligating the District Court to defer to resolution of the Illinois Action.  Dkt. 15. FNC responded that the parties were undisputedly bound by an exclusive forum selection clause mandating venue in the state or federal courts of Harris County, Texas, which as a matter of law could not be

defeated by the "first-filed rule." Dkt. 17.

On June 21, 2024, the District Court entered its Order Entering Stay (the "Stay Order"), staying the Texas Case in deference to the Illinois Action and administratively closing the Texas Case until further notice, subject to reinstatement only upon a determination by the Illinois Court of improper venue. Dkt. 22. The District Court premised its ruling on the "first filed rule" and Broadwind having raised "at least a colorable claim here that a pre-existing settlement agreement, if recognized, invalidates the arbitral award." *Id*. p. 5.

FNC moved the District Court for reconsideration of its Stay Order, pointing out that Broadwind's prior submission of its breach-of-settlement claim to the arbitrator, who dismissed it and denied any further relief to Broadwind in his Award, legally precluded Broadwind from re-litigating it in the Illinois Action. Dkt. 23. By Order entered on July 17, 2024, the District Court denied FNC's motion to reconsider without addressing the preclusive effect of Broadwind's prior submission of its settlement claim to arbitration. Dkt. 24. As of the date of this filing, the Illinois Court has issued no ruling on FNC's motion to dismiss or transfer venue, leaving FNC unable to obtain confirmation of the arbitration award.

## REASONS FOR GRANTING THE WRIT

Under the FAA, FNC has an absolute right to obtain confirmation of its arbitration award in the district stipulated by the parties as the exclusive venue, and

the District Court must confirm such award subject to Broadwind's right to assert any permissible grounds for vacatur or modification.  The "first-filed rule" cannot defeat the parties' forum selection clause, nor should an action to confirm an arbitration award be indefinitely sidelined while the losing party tries to re-litigate a claim that it previously submitted to arbitration.

Although issuance of a writ of mandamus is an extraordinary remedy, it is nonetheless warranted if the petitioner satisfies three conditions.  Mandamus is appropriate where (1) the petitioner has shown a "clear and indisputable" right to the writ; (2) the court is "satisfied that the writ is appropriate under the circumstances"; and (3) the petitioner has "no other adequate means to attain the relief [it] desires."  *In re DePuy Orthopaedics, Inc.,* 870 F.3d 345, 350 (5th Cir. 2017) (*relying on Cheney v. U.S. Dist. Court,* 542 U.S. 367, 380 (2004)).

FNC satisfies all three conditions here, and writ relief should issue without delay.

**1.     FNC has a clear and indisputable right to the writ.**

Under Fifth Circuit precedent, a petitioner's showing of a "clear and indisputable" right to a writ requires more than a showing that the district court misinterpreted or misapplied the law, or otherwise engaged in an abuse of discretion.  Rather, the petitioner must demonstrate a "clear abuse[] of discretion that produce[s] patently erroneous results" or that there has been a usurpation of

8

judicial power." *In re Lloyd's Register N. Am., Inc.,* 780 F.3d 283, 290 (5th Cir. 2015). Put another way, the petitioner "must show that [the district court] *clearly and indisputably erred*" in the challenged order. *In re Occidental Petroleum Corp.,* 217 F.3d 293, 295 (5th Cir. 2000) (emphasis in original).

FNC meets that burden in this case. As the holder of a valid, final arbitration award, it is indisputably entitled under the FAA to proceed to confirmation of the award in the exclusive venue stipulated by the parties. The FAA provides, in relevant part:

> If the parties in their agreement have agreed that a judgment of the court shall be entered upon the award made pursuant to the arbitration, and shall specify the court, then at any time within one year after the award is made any party to the arbitration may apply to the court so specified for an order confirming the award, and thereupon the court *must grant such an order* unless the award is vacated, modified, or corrected as prescribed in sections 10 and 11 of this title. …

9 U.S.C. § 9 (emphasis added). The Supreme Court has observed that "§ 9 carries no hint of flexibility" in "unequivocally" telling courts that they must confirm an award, unless it is vacated or modified as prescribed by sections 10 and 11. *Hall St. Assocs., L.L.C. v. Mattel, Inc.,* 552 U.S. 576, 587 (2007). In this case, the Stay Order impermissibly sidelines the confirmation of the Award on an indefinite basis, depriving FNC of its rights under the FAA.

Section 9 of the FAA is likewise clear that the arbitration parties may apply to "the court so specified" by the parties in their agreement for award confirmation.

It is well established under Supreme Court and Fifth Circuit precedent that where, as here, the parties have contractually fixed mandatory venue in a particular jurisdiction, such venue shall be enforced by the courts.  "When the parties have agreed to a valid forum-selection clause, a district court should ordinarily transfer the case to the forum selected in that clause.  Only under extraordinary circumstances unrelated to the convenience of the parties should a § 1404(a) [transfer] motion be denied."  *Atl. Marine Const. Co. v. U.S. Dist. Ct. for the W. Dist. of Tex.*, 571 U.S. 49, 62 (2013); *see also Noble House, L.L.C. v. Certain Underwriters at Lloyds,* 67 F.4th 243, 250 - 52 (5th Cir. 2023) (violations of forum selection clauses should not be rewarded; "[c]ourts enforce a forum selection clause unless the contracted forum accords the plaintiff no remedies whatsoever"). In the present case, the state or federal courts of Harris County, Texas are the *only* permissible venue under the Lease for actions "in aid of arbitration or a judgment on an arbitration award" or actions "arising out of or relating to [the] Lease."  Dkt. 1, Exh A § 26(e).

Although Broadwind preemptively filed the Illinois Action in an attempt to enjoin the arbitration hearing based upon a purported settlement agreement, how can the District Court here properly defer to the Illinois Court in violation of Broadwind's promise to confine any arbitration- or Lease-related actions to the state and federal courts of Harris County?  It is only the District Court that is

10

empowered to hear and determine such actions, yet it has refused to do so on the premise that the breach of settlement claim in the Illinois Court might "displace[] the prior [Lease] and would serve (potentially) to nullify the arbitral award." Dkt. 22, p. 4 (Stay Order).

The District Court relied on the "first-filed rule" to defer to the Illinois Court, reasoning that there was a "substantial overlap" between the claims in the Illinois Action and the Texas Case and therefore the first-filed court "is better suited to determine whether subsequently filed cases involving substantially similar issues should proceed." Dkt. 22, pp. 2 – 3 (Stay Order), *citing, inter alia, Save Power Limited v. Syntek Finance Corp.,* 121 F.3d 947, 950 (5th Cir. 1997) and *Cadle Co. v. Whataburger of Alice,* 174 F.3d 599 (5th Cir. 1999).  FNC cited abundant case law establishing that every federal court to have considered the question has ruled it is improper to assert the first-filed rule against a valid forum selection clause.  Dkt. 17 (pp. 2-3) and 20 (p. 3) (collecting citations); *Bilodeau v. Ahern Rentals, Inc.*, 2021 U.S. Dist. LEXIS 256662 (S.D. Tex. August 20, 2021), at *10 n.2.  Indeed the precedent from the District Court itself directed that the first-filed rule yield to a valid forum selection clause. *See Bilodeau; DEL Corp. v. Wildcat Fluids, LLC,* 2020 U.S. Dist. LEXIS 237099 * 20-21 (S.D. Tex. 2020) ("[n]or has the Court located any Fifth Circuit authority holding that the first-to-file rule is a proper basis to set aside a valid forum selection clause").

11

Nonetheless, the District Court brushed aside these authorities on the basis that "none of those decisions appear to involve a purportedly intervening settlement agreement" which apparently did not have a forum selection clause and might displace the prior Lease.  Dkt. 22, p. 4 (Stay Order).

But the District Court's reliance on the "intervening settlement agreement" as a valid basis for staying the confirmation proceeding was clearly and indisputably erroneous.  The purported settlement didn't occur after the arbitration hearing or issuance of the Award; FNC provided uncontested documentary evidence that Broadwind had voluntarily submitted its breach-of-settlement claim to the arbitrator *before the final arbitration hearing* and that the arbitrator had dismissed it as untimely under his supplemental pre-trial order and prejudicial to FNC.  *See* Dkt. 1, Exhs. E, F; Dkt. 23, Exhs. 1 – 4.  Accordingly, under established precedent of the Fifth Circuit and apparently every other jurisdiction, Broadwind's submission of the settlement claim to arbitration constituted its consent to arbitrate – even in the absence of an arbitration clause in the purported settlement – and it could not thereafter re-litigate the claim in federal court.

In *OMG, L.P. v. Heritage Auctions, Inc.,* 612 Fed. Appx. 207 (5th Cir. 2015), this Court addressed the case of a party (OMG) that lost at arbitration but then convinced the district court to vacate the award.  OMG argued that there had never been a meeting of the minds concerning the underlying contract, and

therefore there never was any arbitration agreement authorizing the arbitrator to adjudicate the dispute. On appeal, this Court observed that parties may expand the arbitrator's authority to act by "submission of the issue" to him. 612 Fed. Appx. at 210. It observed that OMG consented to the other side's submission of the contract formation question to the arbitrator by participating in the proceeding rather than refusing to arbitrate. *Id.* at 211 – 212. The Court stated:

> OMG simply cannot wait until it receives a decision with which it disagrees before challenging the arbitrator's authority. *See* [*Jones Dairy Farm v. Local No. P-1236*, 760 F.2d 173, 175 (7th Cir. 1985)] ("If a party voluntarily and unreservedly submits an issue to arbitration, he cannot later argue that the arbitrator had no authority to resolve it.") Courts, including our own, have refused to allow such maneuvering where the parties initially submitted their grievances in writing to an arbitrator.

*OMG,* 612 Fed. Appx. at 212 (reversing the judgment that vacated the arbitration award). Likewise, in *Ames v. Kippel,* 1999 U.S. App. LEXIS 38965 (5th Cir. 1999), the Court affirmed the dismissal of claims that the plaintiff had "previously submitted to the arbitrator" and which had been denied, holding that "the district court properly dismissed Ames' claims *with prejudice*, as they were subject to arbitration and addressed by the arbitration award." *Id.,* *6-7 (emphasis added).[2]

---

[2] "[A] valid and final award by arbitration has the same effects under the rules of res judicata, subject to the same exceptions and qualifications, as a judgment of a court." *U.S. Postal Serv. v. Gregory,* 534 U.S. 1, 16 (2001) (Ginsberg, J. concurring and quoting RESTATEMENT (SECOND) OF JUDGMENTS § 84). "[T]he arbitrator issued an award that has the same legal effect as a judgment of this court." *Stoker v. Norris Cylinder Co.,* 2011 U.S. Dist. LEXIS 105699, *7 (E.D.

In *Jones Dairy Farm* – the case relied on by this Court in *OMG* – the employer allowed arbitration to proceed on an issue that was unquestionably outside the scope of the arbitration clause in its collective bargaining agreement. The Seventh Circuit observed that "[i]t would be odd if having consented to have the arbitrator decide what its legal rights to contract out work were, Jones Dairy Farm could then have the same question redetermined by two courts – the district court and this court. We hold that it could not," *Jones Dairy Farm*, 760 F.2d at 176 (reversing with instructions to confirm the arbitrator's award).

"On whatever basis it rests, waiver, estoppel or new contract, the result is that the grievance submitted to the arbiter defines his authority without regard to whether the parties had a prior legal obligation to submit the dispute." *Piggly Wiggly Operators' Warehouse, Inc. v. Piggly Wiggly Operators' Warehouse Indep. Truck Drivers Union,* 611 F.2d 580, 584 (5th Cir. 1980) (held: where the parties unconditionally submitted all issues for resolution by the arbitrator, he was authorized to decide the dispute, even if the scope of the arbitration clause was questionable).

The facts of the present case are even more egregious than those in *OMG, Jones Dairy*, and *Piggly Wiggly*: Broadwind did not just stand idly by while its

___

Tex. 2011) (discrimination and retaliation claims of former employee dismissed where plaintiff had previously submitted claims to arbitrator who issued award against him).

settlement claim was arbitrated, it actually submitted the claim itself to JAMS for arbitration – thus going beyond the passive conduct of the losing parties in those cases. Having thus elected, and consented to, arbitration and suffered dismissal of its claim because of its own dilatory conduct, it was not free to attempt to re-litigate that adverse result by rehashing the same claim in federal court.

This Court has also made it clear that the rule against re-litigating matters previously submitted to arbitration applies to claims that the arbitrator dismissed without addressing the merits. In *Ames*, the Fifth Circuit extended its "extremely deferential" review to the arbitrator's dismissal of the plaintiff's claims for "repeatedly refusing to comply with the arbitrator's orders and warnings." *Ames*, 1999 U.S. App. LEXIS 38965, *4; *see also Forsythe Int'l, S.A. v. Gibbs Oil Co.*, 915 F.2d 1017, 1023 n. 8 (5th Cir. 1990) ("Arbitrators may, for example, devise appropriate sanctions for abuse of the arbitration process"). Thus, even if Broadwind argues that the arbitrator did not reach the merits of its settlement claim, it still cannot re-litigate that claim in the Illinois Action, nor can it prevent confirmation of FNC's award here. Furthermore, the arbitrator himself confirmed that he "struck the settlement claim on a timeliness issue," and stated on the record that "[w]e've arbitrated it." *See* Dkt. 23, Exh. 4 pp. 594 – 95 (excerpt of final hearing transcript). Having submitted their claims to arbitration, the parties are surely bound by the arbitrator's pretrial order (which warned that "[a]ll deadlines

15

shall be strictly enforced") and subject to the consequences of non-compliance, including dismissal of the late-filed claim in this case.  Dkt. 1, Exh. D.

In any event, the case law regarding preclusion of such claims rests on the litigant's consent by its willing *submission* of the claim to arbitration, not on whether the claim was adjudicated on its merits.  "The submission is the 'source and limit' of the arbitrator's power." *Int'l Chem. Workers Union v. Mobay Chem. Corp.,* 755 F.2d 1107, 1110 (4th Cir. 1985) (*quoting Textile Workers Union v. American Thread Co.,* 291 F.2d 894, 898 (4th Cir. 1961)) (submission may be "implied or established by the conduct of the parties"); *OMG* at 212 (voluntary and unreserved submission by a party).  Indeed, it appears that every circuit court that has considered the issue has held that voluntary submission of a claim to arbitration is binding even in the absence of an arbitration agreement.  *See Franklin Elec. Co. v. Int'l Union, United Auto, Aerospace & Ag. Implement Workers,* 886 F.2d 188, 191 (8th Cir. 1989) ("There is growing consensus in the circuits, including this one, that the parties may impliedly consent, outside the express terms of the [contract], to arbitration;" collecting citations).

Finally, Broadwind's breach-of-settlement claim is really an affirmative defense to the Award (*i.e.,* accord and satisfaction) masquerading as an offensive claim.  *See Baylor Health Care Sys. v. Emplrs. Reinsurance Corp.,* 492 F.3d 318, 321 (5th Cir. 2007) (accord and satisfaction is a defense premised on the existence

16

of a new contract that discharges the obligations under the original contract). Accord and satisfaction is not among the enumerated defenses available under FAA sections 10 and 11 (fraud, evident partiality, arbitrator misconduct, etc.). *See Hall St.,* 552 U.S. at 584 (holding that §§ 10 and 11 provide the exclusive grounds for vacatur and modification of awards). Thus, the Stay Order only facilitates Broadwind's improper end-run around the statutory limitation on its arbitration defenses.

The Stay Order amounts to a clear abuse of the District Court's discretion because it subordinates a valid forum selection clause to preemptive forum shopping by Broadwind in deference to a settlement claim that has already been arbitrated and may not now be re-litigated.

### 2. FNC has no other adequate means of obtaining relief.

A second requirement for issuance of a writ of mandamus is a showing by the petitioner that it has no other adequate means of obtaining the desired relief. Here, the Stay Order indefinitely deprives FNC of its statutory right to an expeditious award confirmation process and leaves it sidelined in favor of re-litigating claims in the Illinois Action. Unless this Court intervenes, FNC will be forced to litigate Broadwind's attempt to vacate the Award in the wrong court.

In substance, the District Court's stay and administrative closure of the Texas Case amounts to a venue decision. Indeed, the Stay Order expressly

17

contemplated that "the Northern District of Illinois might well decide [that confirmation of the award is] all beside the point, if an enforceable settlement agreement exists."  Only the Illinois Action may now proceed (although FNC is hopeful that, at some point, the Illinois Court recognizes the impropriety of venue there and dismisses or transfers Broadwind's claims).  Short of that, as FNC has no means of immediately appealing the Stay Order in the usual way, it can expect considerably more delay and expense in a court that was never intended by the parties to consider the enforcement or vacatur of an arbitration award arising from their Lease – thus defeating the FAA's purpose of "assur[ing] that arbitration serves as efficient and cost-effective alternative to litigation."  *Positive Software Solutions v. New Century Mortg. Corp.*, 476 F.3d 278, 280 (5th Cir. 2007) (en banc).

This Court's reasoning in its mandamus cases involving improper venue decisions is equally apposite here. If the Illinois Court denies FNC's motion to transfer venue to the District Court,[3] FNC would not have an adequate means of appeal because it would have to show that it "would have won the case had it been tried in a convenient [venue]."  *In re Nat'l Presto Indus., Inc.,* 347 F.3d 662, 663 (7th Cir. 2003); *In re Volkswagen of Am., Inc.,* 545 F.3d 304, 319 (5th Cir. 2008)

---

[3] In cases involving erroneous venue transfers, there is always the possibility that the receiving court might transfer the case back, but that possibility does not amount to an adequate means of relief to the aggrieved party.  That is particularly the case here, where there was no legal basis for staying a case with a mandatory venue clause in favor of an improperly venued case elsewhere.

(en banc). "[T]he harm -- inconvenience to witnesses, parties and other -- will already have been done by the time the case is tried and appealed, and the prejudice suffered cannot be put back in the bottle. Thus, the writ is not here used as a substitute for an appeal, as an appeal will provide no remedy for a patently erroneous failure to transfer venue." *Volkswagen of Am.* 545 F.3d at 319. This Court has repeatedly found in the analogous venue determination context that "there is no other avenue for petitioners to seek recourse for [an] erroneous transfer decision." *In re Clarke*, 94 F.4th 502, 516 (5th Cir. 2024); *see also In re TikTok, Inc.,* 85 F.4th 352, 367 (5th Cir. 2023); *In re Radmax*, 720 F.3d 285, 287 n.2 (5th Cir. 2013).

### 3.    The writ is appropriate under the circumstances.

"[E]ven if the first two prerequisites [for mandamus are] met, the issuing court, in the exercise of its discretion, must be satisfied that the writ is appropriate under the circumstances. *Cheney,* 542 U.S. at 381. "Writs of mandamus are supervisory in nature and are particularly appropriate when the issues also have an importance beyond the immediate case." *Volkswagen of Am.,* 545 F.3d at 319.

The present case is particularly appropriate for issuance of a writ because the issues bear on the treatment of arbitration awards generally. The Supreme Court has recognized the FAA as "the substance of a national policy favoring arbitration with just the limited review needed to maintain arbitration's essential virtue of

resolving disputes straightaway." *Hall St.,* 552 U.S. at 588. FNC has already arbitrated for 18 months to obtain the Award. But the Stay Order deprives it of an expeditious confirmation process and forces it into further proceedings in the Illinois Court over the previously-arbitrated settlement claim before it can even recommence the confirmation process. This is the very sort of impediment that the Supreme Court condemned when it strictly cabined the defenses to confirmation of an arbitration award in *Hall St.:*

> Any other reading [of the FAA] opens the door to the full-bore legal and evidentiary appeals than can "rende[r] informal arbitration merely a prelude to a more cumbersome and time-consuming judicial review process," [internal cite omitted] and bring arbitration theory to grief in postarbitration process.

552 U.S. at 588; *see also Woods v. PAM Transp., Inc.-LU,* 440 Fed. Appx. 265, 268 (5th Cir. 2011) ("strong policy favoring expeditious enforcement of arbitration awards"); *Positive Software Solutions v. New Century Mortg. Corp.*, 476 F.3d 278, 280 (5th Cir. 2007) (en banc) (must assure that arbitration serves as efficient and cost-effective alternative to litigation).

## CONCLUSION

Unless this Court acts, FNC – the holder of a final arbitration award – will be indefinitely stayed from confirming the award in the exclusive venue established by the parties' Lease. The District Court's decision to stay the Texas Case in deference to respondents' preemptive filing in the Northern District of

Illinois clearly impedes the expeditious process established by the FAA, runs afoul of the Supreme Court precedent enforcing forum selection clauses, and improperly enables the re-litigation of a previously-arbitrated breach of settlement claim.  This matter otherwise meets the rigorous standards for mandamus because FNC has no other adequate means of obtaining relief and the stay thwarts the strong federal policy of enforcement of arbitration awards. For these reasons, the Court should grant the writ of mandamus and order the District Court to vacate its stay, reopen the Texas case, and to take up the confirmation of the Award pursuant to the FAA without further delay.

DATED: July 31, 2024

Respectfully Submitted,

/s/ Richard Smith

Larry Chek
  State Bar No. 04174650
Richard A. Smith
  State Bar No. 24027990
**PALMER LEHMAN SANDBERG PLLC**
8350 North Central Expressway;
Suite 1111
Dallas, Texas 75206
Tel: (214) 242-6444
Fax: (214) 265-1950

**ATTORNEYS FOR APPLICANT
FIRST NATIONAL CAPITAL,
LLC**

## CERTIFICATE OF SERVICE

I certify that on this the 31st day of July 2024, I electronically filed the foregoing Petition for Writ of Mandamus with the Clerk of the Court for the United States Court of Appeals for the Fifth Circuit by using the CM/ECF system.

I further certify that I served the foregoing petition by overnight delivery via Federal Express to the following case participants:

Joseph P. Carlasare
Ronald D. Balfour
Amundsen Davis, LLC
150 North Michigan Avenue, Suite 3300
Chicago, IL  60601

Honorable Charles Eskridge
United States District Judge
Room 9015
515 Rusk Street
Houston, TX 77002

*/s/ Larry Chek*
Larry Chek

## CERTIFICATE OF COMPLIANCE

1.      This petition complies with the type-volume limitations of Fed. R. App. P. 21(d)(1) because this petition contains 5,617 words.

2.      This petition complies with the typeface requirements of Fed. R. App. P. 32(a)(5) and the type-style requirements of Fed. R. App. P. 32(a)(6) because the petition has been prepared in proportionally spaced typeface using Microsoft Word 365 in 14-point Times New Roman font.

Dated:  July 31, 2024

*/s/ Larry Chek*
Larry Chek

*Counsel for First National Capital, LLC*

23

**ATTACHMENT**
**(Order Entering Stay)**

United States District Court
Southern District of Texas

**ENTERED**

June 21, 2024

Nathan Ochsner, Clerk

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| FIRST NATIONAL CAPITAL, LLC | § § § | CIVIL ACTION NO. 4:24-cv-00887 |
| Plaintiff, | § § | |
| vs. | § § § | JUDGE CHARLES ESKRIDGE |
| BROADWIND HEAVY FABRICATIONS, INC and BROADWIND, INC, | § § § § | |
| Defendants. | § | |

**ORDER ENTERING STAY**

The motion by Defendants Broadwind Heavy Fabrications, Inc, and Broadwind, Inc, to stay this confirmation action in favor of litigation proceeding in the Northern District of Illinois is granted. Dkt 15.

  1.  Background

Plaintiff First National Capital, LLC, initiated this action in March 2024 to apply for confirmation of an arbitration award entered in its favor against Defendants. Dkt 1. That award arose from an arbitration proceeding before Judicial Arbitration and Mediation Services, Inc, as instituted to resolve a dispute between the parties over an equipment lease agreement for several gentry cranes. Dkt 1 at 2.

In December 2023, Defendants had previously initiated a parallel case before the United States District Court for the Northern District of Illinois, seeking to enforce the terms of a settlement agreement purportedly entered into between Plaintiff and Defendants in June of 2023. See

*Broadwind, Inc et al v First National Capital, LLC*, No 23-cv-16675 (ND Ill). In February 2024, while Illinois litigation was pending, the JAMS final arbitration award entered. Dkt 1-3 at 3. Plaintiff then filed a motion in March of 2024 to transfer venue for that action to this District. No 23-cv-16675 (ND Ill), Dkt 29. That motion to transfer remains pending as of the date of this Order.

Defendants oppose the application by Plaintiff for confirmation by this Court of the arbitration award. Dkt 14. Pending is their motion to stay this proceeding and allow the Illinois litigation to proceed. Dkt 15. Also pending is a motion by Plaintiff to expedite consideration of its application for the confirmation of the arbitration award. Dkt 16.

2.   Legal standard

The first-filed rule disfavors allowing related cases to proceed in parallel before two federal courts. See *Cadle Co v Whataburger of Alice*, 174 F3d 599 (5th Cir 1999). The Fifth Circuit holds in this regard that, "when related cases are pending before two federal courts, the court in which the case was last filed may refuse to hear it if the issues raised by the cases substantially overlap." Id at 603. "The concern manifestly is to avoid the waste of duplication, to avoid rulings which may trench upon the authority of sister courts, and to avoid piecemeal resolution of issues that call for a uniform result." Ibid, quoting *West Gulf Maritime Association v ILA Deep Sea Local 24*, 751 F2d 721, 729 (5th Cir 1985).

The threshold inquiry for the first-filed rule is whether there is a likelihood of substantial overlap between the cases. *Save Power Limited v Syntek Finance Corp*, 121 F3d 947, 950 (5th Cir 1997). "Once the likelihood of substantial overlap between the two suits has been demonstrated, it is no longer up to the second filed court to resolve the question of whether both should be allowed to proceed." *Cadle Co*, 174 F3d at 605, quoting *Mann Manufacturing v Hortex, Inc*, 439 F2d 403, 407 (5th Cir 1971). Instead, the first-filed court is better suited to determine whether subsequently filed cases involving substantially similar issues should

proceed. *Save Power*, 121 F3d at 950, citing *West Gulf Maritime Association v ILA Deep Sea Local 24*, 751 F2d 721, 728 (5th Cir 1985); *Mann Manufacturing*, 439 F2d at 408. The second-filed court therefore has discretion to dismiss, stay, or transfer a later-filed action in favor of the first-filed action. See *Yeti Coolers, LLC v Ontel Products Corporation*, 2017 WL 8182753, *1 (WD Tex), citing *West Gulf*, 751 F2d at 728–31.

     3.   Analysis

Plaintiff and Defendants dispute in this action whether an email exchange in June of 2023 constitutes a valid, enforceable settlement agreement. Dkts 14 at 4 & 17 at 4. They also dispute here whether the mandatory venue provision of an underlying Master Equipment Lease Agreement controls that settlement agreement. Dkts 17 at 2–4 & 18 at 2.

Both of these dispositive issues are already submitted before the Northern District of Illinois. Indeed, Plaintiff here has filed a motion there to transfer venue here. See *Broadwind, Inc et al v First National Capital, LLC*, No 23-cv-16675 (ND Ill), Dkt 29. In ruling upon that motion, the Northern District of Illinois will necessarily resolve the embedded forum-selection dispute. See *Coinbase, Inc v Suski*, 144 SCt 1186, 1194–95 (2024) (holding that, where parties have agreed to two contracts touching on arbitrability, court must decide whether second agreement supersedes the first).

The efficient administration of justice counsels that the first-filed court—being the Northern District of Illinois—determine whether the mandatory venue provision of the Master Equipment Lease Agreement controls, which in turn counsels in favor of granting Defendants' motion to stay this proceeding. Dkt 15 at 7. Plaintiff's response on its face invites this Court to encroach on the authority of the Northern District of Illinois to make that threshold determination as the first-filed jurisdiction. Dkt 17 at 1. To the contrary, fundamental principles of comity applicable between federal courts, as articulated by the Fifth Circuit, command that such invitation be declined.

Plaintiff cites a number of decisions where valid forum selection clauses have trumped the first-filed rule. For example, see *Wildcat Fluids, LLC v DEL Corporation*, 2020 WL 12863522 (SD Tex); *DEL Corporation v Wildcat Fluids*, LLC, 2020 WL 7374237 (WD La); *Bilodeau v Ahern Rentals, Inc*, 2021 WL 8016841 (SD Tex); *Dixie Electric, LLC v Jarwin*, 2017 WL 12863522 (WD Tex); *Cormeum Lab Services, LLC v Coastal Labs, Inc*, 2021 WL 3077309 (ED La); *Automated Solutions, Inc v Fadal Machining Centers, LLC*, 2011 WL 2182457 (D Idaho); *Megadance USA Corp v Knipp*, 2009 WL 1593493 (D Mass 2009); *Mayer v gpac, LLP*, 2023 WL 3690235 (MD Tenn); *Hy Cite Corp v Advanced Marketing International, Inc*, 2006 WL 3377861 (WD Wis). But none of those decisions appear to involve a purportedly intervening settlement agreement as the second contract that would (assertedly) entirely displace the prior contract requiring both arbitrability and a mandatory forum. And to be clear, it doesn't appear on the record here that the settlement agreement underlying the action brought by Defendants itself has a forum selection clause. There is thus nothing improper in them having immediately sued in an available venue to enforce what they believe to be a binding settlement agreement, with simultaneous assertion that it (potentially) displaces the prior contract and would serve (potentially) to nullify the arbitral award. See *Riley Manufacturing Co v Anchor Glass Container Corp*, 157 F3d 775, 780–81 (10th Cir 1998) (finding settlement agreement to raise "legitimate questions as to the continuing existence and scope of the arbitration clause" in underlying contract, even where latter clause covered "'any and all disputes arising out of or relating to' the contract").

It would likewise be improper for this Court take up Plaintiff's application for confirmation (Dkt 1) and its motion to expedite consideration of same (Dkt 16) while material, overlapping issues remain disputed in another federal court that first obtained jurisdiction. Indeed, reducing the arbitration award to judgment would be inconsistent with the purpose underlying the first-filed

rule. See *Cadle Co*, 174 F3d 599 at 606 (citing "interests of sound judicial administration and judicial economy"). It also bears mention that, if the arbitral award were confirmed here, it would inevitably lead to a prompt enforcement action brought by Plaintiff—likely in some state court with jurisdiction over physical assets—to perhaps execute on the judgment. There's simply no good reason to advance towards that potentiality when the Northern District of Illinois might well decide it's all beside the point, if an enforceable settlement agreement exists.

And to reiterate, Defendants raise at least a colorable claim here that a pre-existing settlement agreement, if recognized, invalidates the arbitral award. Dkt 15 at 6–7. They have also stated intention to challenge the merits of the application and file a cross-motion to vacate the arbitration award on that basis. Id at 8. The Northern District of Illinois will reach the merits of that issue. And so, the confirmation proceeding here not only overlaps with the Illinois litigation, it has the potential to become completely duplicative of it. See *Cadle Co*, 174 F3d at 599.

To the extent that any statement here might be argued as this Court having addressed the merits of any contention that has been placed at issue before the Northen District of Illinois, any such construction is expressly disavowed. This is a procedural ruling only, not substantive.

### 4. Conclusion

The motion by Defendants Broadwind Heavy Fabrications, Inc, and Broadwind, Inc, to stay this confirmation action is GRANTED. Dkt 15.

The motion by Plaintiff First National Capital, LLC, for expedited consideration of its application is DENIED. Dkt 16.

This case is STAYED and all deadlines ABATED.

This action is also ADMINISTRATIVELY CLOSED until further notice. It will be reinstated on the active docket upon motion by a party after the United States District Court for the Northern District of Illinois makes its

determination on the venue issue. A copy of this Order must be attached as an exhibit to any motion to reinstate.

The parties are further ORDERED to file a joint status report on October 30th and April 30th of each year until this action is reinstated or dismissed.

SO ORDERED.

Signed on June 21, 2024, at Houston, Texas.

Hon. Charles Eskridge
United States District Judge